```
            THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| OCASIO-VÁZQUEZ, *et al*, **Plaintiffs,** v. RUBERO-APONTE, et al, **Defendants.** | **CIVIL NO.** 12-1137(JAG) |

## OPINION AND ORDER

GARCÍA-GREGORY, D.J.

Pending before the Court is Dr. Rubén Rubero-Aponte's ("Defendant" or "Dr. Rubero-Aponte") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (Docket No. 36). For the reasons outlined below, the motion is hereby DENIED.

## FACTS

On November 20th, 2007, plaintiffs Paulita Vázquez-Torres, Carmen Vázquez-Torres, and Ralphie Ocasio-Vázquez ("Plaintiffs") filed a complaint for medical malpractice and vicarious liability (the "First Complaint") against Defendant and Quality Health Service of Puerto Rico, Inc. d/b/a Hospital San Cristóbal (the "Hospital"), Dr. Gil Kelly Torres-Lugo ("Dr. Torres-Lugo"), Dr. Karla M. Borrero-Cuello ("Dr. Borrero-Cuello"), SIMED, and Admiral Insurance Company ("Admiral"). (Docket Nos. 29-3, 29-4).

Subsequently, in August, 2010, Plaintiffs entered into a Confidential Settlement Agreement and Release (the "Settlement Agreement" or "Settlement") with the Hospital and its insurer, Admiral, and Dr. Torres-Lugo and his insurer, SIMED. (Docket No. 29-6 at 1). Pursuant to its terms, the Settlement released the Hospital, Dr. Torres-Lugo, Admiral, and SIMED "from any and all past, present and future claims, demands, obligations, actions or causes of action as a result of the facts alleged in the [First] [C]omplaint and/or any of its amendments." Id. at 2. In exchange for the release, Plaintiffs received the total sum of $120,000.00. Id. at 1-2. Under paragraph 7 of the Settlement Agreement, however, Plaintiffs "reserve[d] the right to continue their action against all defendants . . . not included in th[e] [] Settlement []." Id.

On February 28th, 2012, Plaintiffs filed a second complaint for medical malpractice (the "Instant Complaint") against Dr. Rubero-Aponte, Dr. Borrero-Cuello, and SIMED. (Docket No. 29-7 at 1-2). The Instant Complaint is based on the same factual allegations as the First Complaint. See id.[1]

---

[1] Dr. Borrero-Cuello filed a Motion for Summary Judgment on October 1st, 2012. (Docket No. 29). Nevertheless, on April 29th, 2013, she and Plaintiffs filed a Notice of Partial Voluntary Dismissal as to Co-Defendants Dr. Karla Michelle Borrero Cuello and Her Insurance Carrier SIMED, whereby Plaintiffs moved to voluntarily dismiss with prejudice the complaint as to Dr. Borrero-Cuello and SIMED. (Docket No. 38 at 1). By the same

**CIVIL NO.** 12-1137 (JAG)                                                3

On April 15th, 2013, Defendant filed his Motion for Summary Judgment, now pending before the Court. (Docket No. 36). In his motion, Dr. Rubero-Aponte argues that the Settlement Agreement not only released the Hospital, Dr. Torres-Lugo, Admiral, and SIMED, but also released him from all claims and causes of actions resulting from the facts alleged in the First and Instant Complaints. (Docket No. 36 at 2). Defendant specifically argues that, because he was an employee of the Hospital at the time the Settlement was signed, the benefits that accrued to the Hospital under the Settlement must also accrue to him. Id. Other than the uncontested fact that the Hospital employed Dr. Rubero-Aponte at the relevant time period, there is no evidence in the record that clarifies the nature of the relationship between the two parties. Therefore, summary judgment is not proper as a matter of law.

### DISCUSSION

**A. The Settlement Agreement**

The Puerto Rico Civil Code provides that the terms of a settlement agreement will be interpreted restrictively. US Fire Ins. v. A.E.E., 174 D.P.R. 846, 854 (P.R. 2008) (citing P.R. Laws Ann. tit. 31, § 4826). Because of their restrictive

---

token, Dr. Borrero-Cuello moved to voluntarily dismiss her counterclaim, also with prejudice. Id.

**CIVIL NO.** 12-1137 (JAG)                                                4

interpretation, settlement terms must be clearly and precisely drafted. Id. Specifically in the context of a tort action with multiple defendants, where the plaintiff enters into a settlement agreement with one of them, the Supreme Court of Puerto Rico has stated that ascertaining what the parties agreed to is of vital importance to establish the effect of the settlement agreement with regard to the remaining defendants. Id. at 855 (citing P.R. Laws Ann. tit. 31, § 4826); see also Sagardía De Jesús v. Hosp. Aux. Mutuo, 177 D.P.R. 484, 499 (P.R. 2009).

   Here, the terms of the Settlement are clear and precise. Paragraph 4 expressly states that Plaintiffs, pursuant to the Settlement Agreement, "release[d] and forever discharge[d] defendants [the] Hospital [], its insurer Admiral [], Dr. [] Torres-Lugo and his insurer, SIMED . . . ." (Docket No. 29-6 at 2). There is no mention of Defendant's name anywhere in the Settlement. See id. On the contrary, under paragraph 7, Plaintiffs "specifically reserve[d] the right to continue their action against all defendants which are not included" in the Settlement Agreement. Id. at 2. Nevertheless, the crux of Defendant's argument is that the Settlement Agreement released him from all claims resulting from the facts alleged in the First and Instant Complaints by virtue of his employment

relationship with the Hospital. (Docket No. 36 at 2). Therefore, to determine the effect of the Settlement on the claims against Dr. Rubero-Aponte, it is necessary to delve into the vicarious liability doctrine as found in Puerto Rico law.

**B. The Employment Relationship between Defendant and the Hospital**

Under Puerto Rico law, a hospital can be liable for a doctor's malpractice in four distinct situations. See <u>Fonseca v. Hosp. HIMA</u>, 184 D.P.R. 281, 288-90 (P.R. 2012) (citing P.R. Laws Ann. tit. 31, § 5142). First, a hospital is vicariously liable for the negligent acts of its employees. <u>Id.</u> (citing <u>Márquez Vega v. Martínez Rosado</u>, 116 D.P.R. 397, 403 (P.R. 1985)). Hospitals are likewise liable for the negligent acts of doctors who, although not employees, are part of the hospital staff and are available for consults. <u>Id.</u> (citing <u>Márquez Vega</u>, 116 D.P.R. at 407). Third, a hospital is jointly liable with an exclusive franchise contracted to provide special medical services in that hospital. <u>Id.</u> (citing <u>Sagardía De Jesús</u>, 177 D.P.R. at 515-16). Finally, where a hospital grants a doctor the privilege to use the hospital's facilities for his or her private patients, the hospital can be held liable for the doctor's negligent acts if the hospital was careless or imprudent in selecting and granting the doctor such privilege, in monitoring the doctor's

performance, and so on. Id. (citing Márquez Vega, 116 D.P.R. at 409-10).

Defendant states that the Settlement Agreement not only expressly released the Hospital, Dr. Torres-Lugo, Admiral, and SIMED, but also had the effect of releasing him of liability given that he was an employee of the Hospital at the time it was signed. (Docket No. 36 at 2). Although it is uncontested that Dr. Rubero-Aponte was the Hospital's employee, there is no evidence in the record clarifying exactly what type of employment relationship existed between the parties. A finding as to the nature of their employment relationship is necessary to determine whether the Hospital can be held liable for the acts of Dr. Rubero-Aponte under the doctrine of vicarious liability. In turn, only if the Hospital is liable for Defendant's acts can the Settlement Agreement have discharged the claims against him. Because the record is undeveloped on this issue, summary judgment is inappropriate at this time.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, (Docket No. 36), is hereby **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of August, 2013.

<u>S/ Jay A. García-Gregory</u>
  JAY A. GARCÍA-GREGORY
United States District Judge